# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 21-720V

| | |
|---|---|
| LAURA LUNSFORD,<br><br>               Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>               Respondent. | Chief Special Master Corcoran<br><br>Filed: September 26, 2024 |

*Sean Franks Greenwood*, The Greenwood Law Firm, Houston, TX, for Petitioner.

*Camille Jordan Webster*, U.S. Department of Justice, Washington, DC, for Respondent.

### RULING ON ENTITLEMENT[1]

On January 12, 2021, Laura Lunsford filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a shoulder injury related to vaccine administration ("SIRVA") caused by an influenza ("flu") vaccine administered on September 27, 2019. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

For the reasons set forth below, I find that Petitioner is entitled to compensation.

---

[1] In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

I.   **Relevant Procedural History**

On April 6, 2023, Respondent filed a Rule 4(c) Report opposing compensation, because the medical records do not reflect onset of shoulder pain within 48 hours of vaccination. ECF No. 40 at 6-7. On April 28, 2023, Petitioner was ordered to submit a Motion for a Ruling on the Record, as well as any additional information addressing issues raised in Respondent's Rule 4(c) Report and did so that June. ECF No. 34 ("Mot."). Respondent opposed the motion on August 8, 2023, reiterating the arguments set forth in the Rule 4(c) Report. Respondent's Response to Petitioner's Motion for Ruling on the Record Regarding Onset ("Opp."), ECF No. 45. Petitioner filed a reply on August 15, 2023. Petitioner's Reply to Respondent's Response to Petitioner's Motion for a Ruling on the Record ("Reply"), ECF No. 47. The matter is ripe for resolution.

II.   **Petitioner's Medical Records**

Petitioner's past medical history includes no reports of left shoulder issues. Petition at 1. On September 27, 2019, Petitioner received the flu vaccine in her left shoulder. Ex. 9 at 48.

On October 1, 2019, Petitioner saw P.A. Jay Gibson for a medication refill unrelated to her left shoulder. Ex. 5 at 1, 4, 5. There is no mention of shoulder pain or discomfort at that time.

Petitioner returned to PA Gibson on October 11, 2019, with reports of left shoulder pain. Ex. 5 at 1-2. The record notes that the onset of her pain was October 2, 2019, and "Pain x 1 week after getting flu shot…." *Id.* It also states Petitioner received the flu injection and then the pain started. *Id.* at 2. An examination showed a restricted range of motion, and Petitioner was assessed with left shoulder joint pain with suspected frozen shoulder. *Id.*

On October 14, 2019, Petitioner saw N.P. Nancy Baquirin at urgent care for left shoulder pain. Ex. 7 at 45. Petitioner reported that her shoulder pain started after receiving the flu vaccine on October 4, 2019, and that it was a gradual, achy pain at the site of injection. *Id.* An examination showed decreased range of motion, however her x-rays were normal. *Id.* at 45, 46, 80. Petitioner was prescribed Mobic and a Medrol Dosepak. *Id.* at 13.

Petitioner saw orthopedic surgeon Dr. Bradley Dyrstad on November 7, 2019. Ex. 2 at 5. She reported immediate left shoulder pain since October 11, 2019 after receiving the flu vaccine. *Id.* An examination showed rotator cuff tenderness and positive

impingement signs. *Id.* An MRI revealed mild supraspinatus and infraspinatus tendinosis. Ex. 8 at 231.

Petitioner returned to Dr. Dyrstad on February 14, 2020, reporting continued left shoulder pain that started after vaccination. Ex. 3 at 12. An EMG was ordered, and Dr. Dyrstad recommended she continue her at-home exercises. *Id.* at 15.

On March 26, 2020, Petitioner again saw Dr. Dyrstad for left shoulder pain. Ex. 3 at 6. She reported tenderness in the rotator cuff and positive impingement signs. *Id.*

Petitioner has submitted an affidavit and declaration in support of her petition. Ex. 1, 12. In her affidavit, she explained that her flu vaccine "stung more than any prior flu shot [she] had received." Ex. 1 at 2. In the declaration, she detailed how the pain in her left shoulder occurred upon vaccination and over "the next two days, the pain began to progress from a small stabbing sensation to deep throbbing pain in the joint…." Ex. 12 at 1-2.

### III.    Fact Findings and Ruling on Entitlement

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). In addition to requirements concerning the vaccination received, the duration and severity of petitioner's injury, and the lack of other award or settlement,[3] a petitioner must establish that she suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. Section 11(c)(1)(C).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of an influenza vaccine. 42 C.F.R. § 100.3(a)(XIV)(B). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:

---

[3] In summary, a petitioner must establish that she received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of her injury for more than six months, died from her injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for her injury. *See* § 11(c)(1)(A)(B)(D)(E).

>   (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;
>
>   (ii) Pain occurs within the specified time frame;
>
>   (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and
>
>   (iv) No other condition or abnormality is present that would explain the patient's symptoms (*e.g.*, NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, the Federal Circuit has recently "reject[ed] as incorrect the presumption that medical records are always accurate and complete as to all of the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021). Medical professionals may not "accurately record everything" that they observe or may "record only a fraction of all that occurs." *Id.*

Medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998) (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health &*

*Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

### A. Factual Findings Regarding a Table SIRVA

After a review of the entire record, I find that a preponderance of the evidence demonstrates that Petitioner has satisfied the QAI requirements for a Table SIRVA.

#### 1. Petitioner Had No Prior Left Shoulder Condition or Injury that would Explain her Symptoms

The first requirement for a Table SIRVA is a lack of problems associated with the affected shoulder prior to vaccination that would explain the symptoms. 42 C.F.R. § 100.3(c)(10)(i). Respondent does not dispute that Petitioner meets this criterion. I find that she has demonstrated a lack of history of pain, inflammation, or dysfunction of her left shoulder that would explain her symptoms.

#### 2. Onset of Petitioner's Injury Occurred within Forty-Eight Hours of Vaccination

The medical records preponderantly establish onset of injury close-in-time to, 2019 vaccination, stating that she had a flu vaccination and her pain started. Ex. 5 at 2. Thereafter, she consistently linked her shoulder pain to the flu shot. *See* Ex. 7 at 45 (record from October 14, 2019 stating that Petitioner's pain started after a flu vaccine with subsequent gradual development); Ex. 2 at 5 (record from November 7, 2020 starting Petitioner's pain started immediately after her flu vaccination).

Respondent argues that Petitioner inconsistently reported onset of her shoulder pain, stating in different records that it started five days post-vaccination (Ex. 5 at 1-2), that it occurred "after" her vaccination (Ex. 7 at 45), and/or that it occurred immediately after vaccination. Ex. 2 at 5. Further, Petitioner failed to report shoulder pain when she had an appointment for medication refills October 1, 2019. Ex. 5 at 1, 4, 5.  Even so, a finding of proper onset can be made based on such a record. Program petitioners are not required to marshal records setting forth with chronographic specificity the precise day and hour that their onset manifested. As noted above, Petitioner consistently linked her shoulder pain to the September 27, 2019, flu vaccine.

Additionally, the relevant medical records show that Petitioner reported shoulder pain in a relatively timely manner, when measured from the date of vaccination Thus, Petitioner first began to complain of shoulder pain within thirteen days of the vaccine and

5

did not attribute her pain to any other injury or cause. It is common for SIRVA petitioners to delay seeking treatment, thinking the injury will resolve on its own, especially since patients are often told by medical providers at the time of vaccination to expect some soreness and pain for a period of time after. And individuals also often misconstrue the nature of their injury, and therefore fail to inform treaters of all specific facts relevant to onset until later. Here, the added detail of onset did not "wait" for months before being provided but began to be reported in a reasonable time post-vaccination. And Petitioner affirmatively and repeatedly linked her shoulder pain to the flu vaccine. Further, it is not unexpected that Petitioner did not raise her shoulder pain on October 1, as that appointment was for a specific and unrelated issue, *i.e.,* medication refills.

Accordingly, there is preponderant evidence that establishes the onset of Petitioner's left shoulder pain more likely than not occurred within 48-hours of vaccination.

### 3. Petitioner's Pain was Limited to her Left Shoulder

Petitioner's pain was limited to her left shoulder. Respondent does not contest this aspect of Petitioner's claim, and there is nothing in the records to suggest otherwise.

### 4. There is No Evidence of Another Condition or Abnormality

The last criteria for a Table SIRVA state that there must be no other condition or abnormality which would explain a petitioner's current symptoms. 42 C.F.R. § 100.3(c)(10)(iv). Respondent does not contest this aspect of Petitioner's claim, and there is nothing in the records to suggest that any such condition or abnormality exists.

### B. Other Requirements for Entitlement

In addition to establishing a Table injury, a petitioner must also provide preponderant evidence of the additional requirements of Section 11(c). Respondent does not dispute that Petitioner has satisfied these requirements in this case, and the overall record contains preponderant evidence to fulfill these additional requirements.

The record shows that Petitioner received a flu vaccine intramuscularly on September 27, 2019, in the United States. Ex. 9 at 48; *see* Section 11(c)(1)(A) (requiring receipt of a covered vaccine); Section 11(c)(1)(B)(i)(I) (requiring administration within the United States or its territories). Further, Petitioner suffered the residual effects of her injury for more than six months. Ex. 3 at 6; *see* Section 11(c)(1)(D). There is no evidence that Petitioner has collected a civil award for her injury. Ex. 1 at 7; Section 11(c)(1)(E) (lack of prior civil award).

Based upon all of the above, Petitioner has established that she suffered a Table SIRVA. Additionally, she has satisfied all other requirements for compensation. I therefore find that Petitioner is entitled to compensation in this case.

## Conclusion

**In view of the evidence of record, I find that there is preponderant evidence that Petitioner satisfies the QAI requirements for a Table SIRVA. Further, based on the evidence of record, I find that Petitioner is entitled to compensation.**

**IT IS SO ORDERED.**

s/Brian H. Corcoran
Brian H. Corcoran
Chief Special Master
